W. C. Sharp Drug Stores *et al. v.* Hansard.

(*Knoxville,* September Term, 1940.)

Opinion filed November 23, 1940.

GREEN, WEBB, BASS & McCAMPBELL, of Knoxville, for plaintiffs in error.

W. P. O'NEIL and H. F. JARVIS, both of Knoxville, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This is a workman's compensation suit instituted by Mrs. Myrtle Hansard, for her own use and that of her three minor daughters, against W. C. Sharp Drug Stores, a partnership, and its liability insurer, Hartford Accident and Indemnity Company, to recover compensation for the accidental death of her twenty-year-old son, Eugene Hansard.

The principal defense relied upon is that said accidental injury and death did not arise out of and in the course of the employment.

The trial court awarded Mrs. Hansard and her two younger daughters compensation, the elder daughter having married shortly after the death of her brother, and from that award the W. C. Sharp Drug Stores has appealed.

This partnership operated three drug stores in the city of Knoxville. About the first of October, 1937, the deceased was employed as a motorcycle messenger at Store No. 3, located on the corner of Magnolia Avenue

and Central Street. His hours of service were from 7 A. M. to 9 P. M. seven days in the week, and occasionally he worked overtime. He delivered packages in the city as well as in the territory adjacent thereto, one witness testifying to a delivery he made ten miles from the store. Deceased lived at Fountain City, four or five miles from the store, with his mother and three sisters, whose ages at the time of his death were seventeen, twelve and seven years respectively. He used a motorcycle in delivering packages, in going to his home at night, and in returning to the store in the morning. The controversy narrows down to the simple fact as to whether, under his verbal contract, deceased was to provide his own transportation or whether it was to be provided by his employer. Deceased owned a motorcycle and his employer owned one, and during the six and one-half months that deceased worked for the partnership he used each machine part of the time. The employer insists that deceased was to provide his own transportation and only used the partnership motorcycle when his machine was out of commission. It is the contention of Mrs. Hansard that the employer was to furnish the transportation and that deceased only used his own motorcycle when the employer's machine was disabled.

About 7:30 A. M. on April 18, 1938, as deceased was traveling south on Broadway en route to his work, an automobile traveling north on Broadway suddenly turned west on Atlantic Avenue just as deceased was approaching that cross street, so that deceased collided with said automobile and received injuries which caused his death.

The finding of the trial court, in part, is as follows:

"The Court finds as a fact that deceased was killed while riding on a motorcycle, and that it was within the course and scope of his employment and a part of his

contract of employment and a part of his duty to ride said machine to said Sharp Drug Store #3 on said occasion. That deceased was earning an average weekly salary of $15.00 per week and that in addition thereto, the employer furnished the deceased with a motorcycle for his own use in said employment which he kept at his home, and when said machine was out of repair, said employer, W. C. Sharp Drug Store #3 rented from the deceased the motorcycle belonging to the deceased at a stipulated sum per week in addition to his salary of $15.00 per week.''

 If the employer, as a part of the contract, was to furnish deceased transportation, then under our decisions this accidental injury and death arose out of and in the course of the employment. *McClain* v. *Kingsport Imp. Corp.*, 147 Tenn., 130, 245 S. W., 837; *Norwood* v. *Tellico River Lbr. Co.*, 146 Tenn., 682, 244 S. W., 490, 24 A. L. R., 1227. In fact, this is conceded by counsel.

While upon this issue the evidence is close, after carefully weighing it, we have concluded that there were sufficient facts and circumstances to justify the trial court in finding that the employer was to furnish transportation for deceased. The employer had purchased a motorcycle to be used by its delivery messenger, and it was so used by John Hensley in that capacity just prior to the employment of deceased. Within a few days after deceased was employed by this partnership he and a man by the name of Luther Arp rode on the motorcycle of deceased to the home of John Hensley where they obtained possession of the partnership machine, each operating one of the motorcycles on the return trip. There is evidence that deceased used his employer's machine from that day until it broke down, which, according to Mrs. Hansard, was two or three weeks before he was killed, and six or eight weeks before that event,

according to Dr. Stevens, manager of the No. 3 Store. Tom Dalton, who worked in the store, with respect to the partnership motorcycle, testified that deceased quit using it because there was something wrong with the motor, and the flywheel was stripped so that the chain would not pull it. When it could not be used any longer it was stored in the garage of the Motor Transfer Company, and deceased then began using his own machine and was operating it when he was killed.

Mrs. Hansard testified that her son's weekly wage was $15, but that when he used his own machine the Sharp Drug Stores paid him $20 per week, while Dr. Stevens says he was paid three or four dollars more. It is unreasonable to assume that the employer would pay its delivery messenger three, four or five dollars per week for the use of his machine when it owned a machine which was purchased for use by such employee.

It is true that Dr. Stevens testifies that he was to pay deceased $18 per week and that he was to use his own motorcycle, but he admits that when deceased began working at the store he used the partnership machine and gives as a reason that deceased did not own a machine at that time; while the uncontroverted testimony shows that deceased purchased his machine in July, 1937, and the acquisition of his machine had no connection whatever with his employment by W. C. Sharp Drug Stores in October, 1937. Furthermore, if he was to use his own motorcycle, why did he go to the home of John Hensley just after his employment for the partnership machine and use it continuously until it broke down a few weeks before he was killed? There is not a line of evidence that the motorcycle of deceased was ever out of repair, and when his employer's machine broke down he immediately began the use of his own.

Dr. Stevens is not definite and positive in his testimony, and his memory seems to be hazy as to the terms of the agreement with deceased. Although he is the manager of this store, he does not produce a check, book entry, or any other evidence to support his theory that deceased was only to use the partnership machine when his own was out of commission. He does not even contradict Mrs. Hansard's testimony that when deceased began using his own motorcycle, shortly before his death, that his weekly wages were increased. It would seem that the books of the partnership would throw light on this question.

Taking the record in its entirety, we think there is ample evidence to support the finding of the trial court on this issue.

The mere fact that the partnership, when its machine broke down, rented a motorcycle from deceased instead of from some other person or company, would not, in and of itself, change the relationship of the parties. There is no evidence that the original contract was ever changed in this respect, and, in the absence of such evidence, it will be presumed that the parties were operating under the original agreement.

It further appears that the partnership motorcycle was equipped with saddlebags in which to place packages. Also, that occasionally deceased brought packages home with him at night which he would deliver the next morning to customers. The testimony shows that the partnership motorcycle could not be kept in the drugstore at night without violating the fire regulations, so that it had to be stored in a public garage or in the garage of deceased at his home, and the latter would be less expensive for the owner. All of these facts support the theory that it was the intention of the parties that the partnership was to

pay deceased $15 per week and provide him with a motorcycle to deliver packages, ride to his home at night, park in his garage, and transport him to the store the next morning.

There is ample evidence to support the finding of the trial court that the death of deceased was not caused by his willful misconduct, or by his willful failure to perform a duty required by law. At the time of the accident a drizzling rain was falling. Mrs. Ferguson, who was driving her automobile north on Broadway, on reaching Atlantic Avenue, brought her car to a stop, awaiting the passage of a line of automobiles moving south on Broadway. Just as the last automobile passed Mrs. Ferguson turned suddenly to her left into Atlantic Avenue. Deceased, who was following the line of cars, ran his motorcycle into the side of Mrs. Ferguson's automobile and was fatally injured. There is evidence that deceased was on his side of the road, running at a speed of twenty to thirty miles per hour, and either did not see Mrs. Ferguson in time to avoid the injury, or it may be that Mrs. Ferguson did not see him, although she testifies that she saw him some distance away coming at a terrific rate of speed and that he deliberately ran against her car. Deceased may have been guilty of negligence, but, taking the testimony which was accepted by the trial court, we do not consider his conduct such as to come within the willful misconduct provision of the compensation law. *Town of Shelbyville* v. *Hamilton,* 170 Tenn., 297, 95 S. W. (2d), 43.

Counsel for the plaintiffs in error raise the point that a guardian should have been appointed to receive the compensation awarded for the benefit of the two minor sisters of deceased. These little girls live with their mother, so that under the statute it is proper to pay all

compensation to the mother. *McCreary* v. *Nashville, C. & St. L. Ry.,* 161 Tenn., 691, 34 S. W. (2d), 210.

It is finally insisted that the trial court was in error in finding that the mother and two younger sisters of deceased were entirely supported by him. Mrs. Hansard so testified with two exceptions. She admits that over a period of months she earned two or three dollars making some little dresses for children in the neighborhood. This is too trivial and insignificant to merit consideration. Mrs. Hansard also admits that beginning in September, 1937, and continuing up until the death of her son, she received for her three minor children $12 per month from the State of Tennessee under the "Aid to Dependent Children Act," Chapter 50, Public Acts of 1937. The trial court decreed to the mother of deceased $3.75 per week for her own use and a like sum for her two children. It is the insistence of counsel for the insurer that these children were only partial dependents, and that in computing their compensation the income which they received from the State—namely, $4 each per month—should be considered. We are of the opinion that counsel are correct in this contention.

The pertinent section of the Code provides as follows:

"6883. Who are dependents, wholly and partial.—For the purposes of this chapter, the following described persons shall be conclusively presumed to be wholly dependent: . . .

"(3) Wife, child, husband, mother, father, grandmother, grandfather, sister, brother, mother-in-law, and father-in-law who were wholly supported by the deceased workman at the time of his death and for a reasonable period of time immediately prior thereto shall be considered his actual dependents, and payment of compensation shall be made to them in the order named.

"(4) Partial dependents.—Any member of a class named in subdivision (3) who regularly derived part of his support from the wages of the deceased workman at the time of his death and for a reasonable period of time immediately prior thereto shall be considered his partial dependent, and payment of compensation shall be made to such dependents in the order named. . . .

"(16) Partial dependents to receive proportion.— Partial dependents shall be entitled to receive only that proportion of the benefits provided for actual dependents which the average amount of the wages regularly contributed by the deceased to such partial dependent at, and for a reasonable time immediately prior to the injury, bore to the total income of the dependent during the same time."

From the foregoing it plainly appears that one who receives an income from some other source in addition to that received from the deceased is only a partial dependent. In this case these sisters were not wholly supported by the deceased because each one received $4 per month from the State.

The word "income" is a broad, comprehensive and inclusive term and is generally defined as meaning all that comes in; that which has come in. 31 C. J., 397.

In *Johnson Coffee Co.* v. *McDonald*, 143 Tenn., 505, 512, 226 S. W., 215, 217, it is said that: "The law is that under workmen's compensation acts dependency means reliance for support upon workmen's earnings at the time of injury or death, and not at any time thereafter. The condition of things then existing is determinative, and the courts will not consider subsequent events as affecting the right of dependents to compensation, provided they were dependent within the meaning of the act at the time of the injury or death."

 From the time when deceased became employed by the Sharp Drug Stores he contributed regularly to the support of his mother and sisters out of his wages up until he was killed. His mother under the statute was his actual dependent, since she had no other source of income and was entitled to 25 per cent of his weekly wages of $15, or $3.75, for 400 weeks. The daughters, however, were not wholly supported by deceased because at the same time he was contributing to their support the State was likewise contributing. Such was the situation when deceased was killed. The contribution by the State was just as much income as was that provided by deceased.

In Schneider's Workmen's Compensation Law (2 Ed.), Vol. 2, p. 1299, it is said:

"Where the parents were receiving a pension in addition to the son's contributions, a finding of partial dependency was in accordance with the facts in the case."

 In the present case the record does not show the amount of support or income the two younger sisters of deceased received from him. In the absence of such evidence, the court cannot compute the compensation coming to them under the statute, as construed and applied in *Bohlen-Huse Coal & Ice Co.* v. *McDaniel*, 148 Tenn., 628, 257 S. W., 848.

The decree of the trial court will be affirmed as to the compensation awarded Mrs. Hansard. If counsel can agree as to the compensation to be paid for the use and benefit of the two younger sisters of deceased, a decree will be entered in this court in accordance with such agreement; otherwise the case will be remanded to the circuit court for proof and the fixing of such compensation.

Plaintiffs in error will be taxed with three-fourths and defendant in error with one-fourth of all costs.