Hugh Ward and Maryland Casualty Insurance Company, Plaintiffs in Error,

*v.*

Mrs. Madeline Naibors Ward, Defendant in Error.

378 S. W. 2d 754

(*Jackson,* April Term, 1964.)

Opinion filed May 8, 1964.

Lloyd S. Adams, Jr., Adams & Adams, Humboldt, for plaintiffs in error.

G. Griffin Boyte, Warmath & Boyte, Humboldt, for defendant in error.

Mr. Justice White delivered the opinion of the Court.

In this action, brought under the Workmen's Compensation Law, the trial judge awarded the full benefits of the Act to Mrs. Ward and her minor son for the death of her husband, Larry Fern Ward, who lost his life under the circumstances detailed herein.

The employer and the insurance company have prosecuted an appeal in error to this Court from the award made by the trial judge. In the brief filed on their behalf it is said that the ultimate issue in the case to be decided by this Court is: Did the deceased employee, Larry Fern Ward, meet his death as a result of an injury by accident arising out of and in the course of his employment?

The issue is clearly defined by the petition and the answer, and there is little, if any, dispute over the ultimate facts.

The deceased employee worked for his brother, Hugh Ward, dba, Hugh Ward Roofing and Sheet Metal Contractor, in Humboldt, Tennessee, as a supervisor or superintendent of roofing construction. The employer furnished an automobile to his brother-employee for travel between the base of operations in Humboldt and various job sites. This employee was paid a weekly wage of $120.00, and worked six or seven days each week, depending on the number of jobs under his supervision.

In our opinion, the defendants made a very fair and accurate statement of the facts in the answer filed by them in which it is said that the employee had intended to move his wife and son from Birmingham to Humboldt during the week of March 25, 1963. At about noon on Saturday, March 23, 1963, he left the shop of his employer in Humboldt, bound directly for Birmingham, Alabama, to make arrangements for the move.

A few days earlier defendant Hugh Ward had completed a contract for roofing West Chester Elementary School located approximately three miles west of Henderson, Tennessee. Said employee commuted daily from Humboldt while superintending this job.

On March 23, 1963 the employee left Humboldt at noon, or shortly thereafter, with the understanding that he would be off from work the following Monday morning, March 25, 1963 to arrange the details in Birmingham for moving his family to Humboldt. His instructions were to return to Humboldt by 5:00 P.M. on Monday, March 25, 1963 to check in the various working crews

at the shop of his employer and to stop by Henderson on his return trip from Birmingham to inspect the completed West Chester Elementary School job.

Henderson is on a direct route from Birmingham to Humboldt, but on the return trip from Birmingham the employee never reached Henderson because he was involved in a fatal automobile accident approximately fifteen miles south of Savannah, Tennessee, and more than fifty miles south of Henderson, Tennessee, at about 3:15 P.M. on said date.

Under these facts Mrs. Ward contends that the injuries received by her husband resulting in his death, arose out of and in the course of his employment. The defendants, on the other hand, maintain that ''at the time of said accidental injury Larry Fern Ward was on a mission personal to him and for his own benefit, not connected in any way with his employment by defendant Hugh Ward; and his accidental injury and death did not result from a hazard or risk incurred by reason of his employment by defendant Hugh Ward.'' This is a fair statement of the answer of the defendants.

For about two years prior to the date of the accident the deceased had been in the employ of his brother, defendant Hugh Ward, working out of Humboldt where he boarded with their sister. He continued to maintain a home which he owned in Birmingham, Alabama as he had done for about twenty years before his death. In this home his wife and their minor son, a dependent minor child, continued to reside. During this two year period of employment, Ward returned to Birmingham an average of once every two months, according to the proof. During his employment he had worked on jobs

"all around the countryside * * * from Cairo, Illinois to Oxford, Mississippi, and from Covington all the way back to Dover or Clarksville, Tennessee."

The automobile or station wagon furnished by the employer was used by the employee for traveling between the employee's place of residence with his sister in Humboldt, and the employer's office in Humboldt, and to various job sites where he was required to work.

Said motor vehicle was also used by Ward for transportation to visit his family in Birmingham, but on these occasions the expenses were borne by said employee except if, according to his employer's testimony, there was something for him to do for his employer on his return trip from Birmingham to Humboldt, the employer would pay his expenses on the way back.

In examining the employer about his conversation with his brother just prior to his leaving to go to Birmingham for the weekend, he was asked:

"Q. And prior to his leaving you gave him certain instructions about returning on Monday, is that correct?

"A. That is correct.

"Q. Just tell us what you remember, (that is, what were your instructions to your brother).

"A. For him to finish his business in Birmingham and to come back home, to be back home that afternoon and come through Henderson because we had been having trouble on that job down there, to check them to see if we were having any trouble, and if we did for him to do the very best that he could to see if he could rectify it while he was there and after he had finished that to

come home and check our various crews that we had out on the job working. That is the extent of it."

Mr. Ward also testified that on many occasions his brother "had left from his home, that is the place where he was living in Humboldt, and went to Dover or Clarksville, Brownsville, Covington and other places and never came by the shop, on my instructions, previous to the day he left."

■ We cannot see any difference or distinction in principle between Larry Fern Ward going directly from the home of his sister where he was living in Humboldt, Tennessee to Henderson, or to other jobs of his employer, and going directly from his home in Birmingham to Henderson, Tennessee under the instructions of his employer.

If, on the day of his accident, Ward had been traveling directly from his sister's home in Humboldt toward Henderson and suffered injuries, while acting under the instructions of his employer, his right to compensation would not have been questioned.

When he lost his life he was acting under the instructions of his employer in traveling from Birmingham toward Henderson. In either event it is clear to us that he would have been considered under the direction and control of his employer and, therefore, within the course, purpose and scope of his employment. When he left Birmingham he did exactly as instructed by his employer in that he was on his way to Henderson for the purposes indicated above.

This case does not present a question of deviation from employment or from instructions, but, on the other hand,

the proof shows clearly that the employee was doing exactly that which he had been instructed to do.

In making his final ruling the trial judge said that the place of residence of the employee was immaterial. It would have made a difference, in his opinion, if the instructions had been for the employee to make the inspection in Henderson on the way to Birmingham instead of on his way back. He said further:

"I think it would be similar to a man who was on vacation and had instructions, on your way home go by and do so and so. If he was en route he would be within the scope of his employment. Now, even though the vacation was purely personal, a personal mission of his own, his instructions from his employer were to, on your way home go by and do something for my benefit, and he didn't deviate from the route back to the place where he was to do the benefit, certainly, I think it would be in the scope of the employment.

"* * * Under the facts and circumstances in this case, there is no question but when he left Birmingham that morning he was on his employer's business."

■ As a general proposition, injuries arise out of and in the course of employment when an employee is using the transportation provided by his employer in going to and returning from work. *McClain v. Kingsport Improvement Corp.*, 147 Tenn. 130, 245 S.W.2d 837 (1922); *Sharp Drug Stores v. Hansard*, 176 Tenn. 595, 599, 144 S.W.2d 777 (1940); *Spradling v. Bituminous Casualty Corporation et al.*, 182 Tenn. 443, 451, 187 S.W.2d 626 (1945).

■ The Workmen's Compensation Law should be liberally construed to secure the beneficiaries thereof

every protection which it authorizes resolving any reasonable doubt as to whether the act or injury arose out of the employment in favor of the employee whenever rationally possible. *Ward v. Commercial Ins. Co.*, 213 Tenn. 100, 372 S.W.2d 292 (1963), and other cases therein cited.

In the case of *Jackson v. Clark & Fay, Inc.*, 197 Tenn. 135, 270 S.W.2d 389 (1954), which was approved in the case of *West Tennessee Nix-A-Mite Systems, Inc. v. Funderburk*, 208 Tenn. 381, 346 S.W.2d 250 (1961), it was held that an injury, to be compensable, need not have been foreseen or expected. However, after the event it must appear to have had its origin in a risk connected with the employment.

In the present case the employer knew, of course, that his brother's home was in Birmingham. He gave him specific instructions to come by Henderson and inspect the job when he left Birmingham on the occasion in question. Therefore, in our opinion this employee was under the direction and control of his employer from the time he left Birmingham until the time of his injuries resulting in his death.

In the case of *Martin v. Free Service Tire Co.*, 189 Tenn. 327, 225 S.W.2d 249 (1949), referred to in *West Tennessee Nix-A-Mite Systems, Inc. v. Funderburk*, it was also stated:

"If the duty of the employee creates the necessity for travel, then 'the risks of travel are directly incident to the employment itself. In such cases resulting injuries are the proper subject for compensation.' "

While it was not a part of the duty of the employee to travel to Birmingham, it was a part of his duty, when

directed by his employer, to travel to Henderson, Tennessee. Whether he was traveling to Henderson from Humboldt, Birmingham, or elsewhere is immaterial. The question is whether or not he was acting under the instructions of his employer and, of course, the proof shows beyond doubt that he was so acting in this case.

In *White v. Whiteway Pharmacy, Inc.*, 210 Tenn. 449, 454, 360 S.W.2d 12 (1962), the proposition that findings of fact of the trial court will not be disturbed on appeal if supported by any material evidence, though the preponderance of the evidence is against the finding of the trial court, was again affirmed.

But, from our reading of this record the material evidence rule for affirmance is unnecessary because if we were the triers of fact in the first instance in this case, we would have found in favor of the petitioner.

Therefore, we affirm the action of the trial court and remand this case for further proceedings consistent with this opinion.

BURNETT, CHIEF JUSTICE, and FELTS, DYER and HOLMES, JUSTICES, concur.