**Omer Lee DIXON, Jr.**

v.

**TRAVELERS INDEMNITY COMPANY.**

Supreme Court of Tennessee, at Jackson.

Nov. 3, 2010 Session.

March 3, 2011.

public after redacting certain information pursuant to Internal Revenue Services regulations.

James M. Simpson and Heather W. Fletcher, Memphis, Tennessee, for the appellant, Travelers Indemnity Company.

David Hardee, Jackson, Tennessee, for the appellee, Omer Lee Dixon, Jr.

## OPINION

SHARON G. LEE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

The primary issue presented in this appeal is whether an employee, who was injured when a tornado struck the tractor-trailer rig he was driving for his employer, has a compensable workers' compensation claim. The central dispute between the parties is whether the claim arose out of the employment relationship. After careful review, we conclude that the employee was injured when he was subjected to a hazard not common to the general public but peculiar to the nature of his employment and to the conditions under which his employment was required to be performed. Accordingly, the injury arose out

of his employment. The trial court's judgment holding the employee's claim to be compensable and its award of benefits is affirmed.

## Background

On May 9, 2007, Omer Lee Dixon ("Employee") was driving an 18–wheel truck tractor and trailer east on Interstate 40 from California to Tennessee. His employer, Ozark Motor Lines, Inc. ("Employer"), had instructed him to deliver a load of freight to its Memphis, Tennessee, terminal by 7:00 a.m. the next morning. Just before midnight on May 9, Employee was traveling through Oklahoma in heavy traffic when he encountered hard rain and wind. As the storm gathered intensity, Employee slowed his speed from sixty-five miles per hour to between thirty to forty miles per hour and decided to seek shelter from the storm by getting off the interstate. Traffic, however, was backed up at the exit ramp. Deciding it would be safer to drive to the next exit ramp rather than wait in the right lane to exit or to pull onto the emergency shoulder, he drove on in the storm.

As he continued driving slowly in the storm, he saw a billboard or exit sign next to the westbound lane of the interstate suddenly blow across the highway. Seeing this, Employee slowed his speed to ten miles per hour. As his vehicle began to vibrate and shake, he looked in his rear view mirror and saw the truck's trailer rising up off the ground. At this moment, a tornado violently struck the rig and lifted it off the ground with the trailer in a vertical position and the truck's cab facing the ground. The entire rig was hurled through the air and dropped approximately one-half mile down the roadway. The tractor turned over and landed on the driver's side in a ditch, and the trailer rolled across the roadway. After the trac-

tor came to rest, Employee climbed out of the front of the cab where the windshield had been torn away. A passerby assisted Employee until medical help arrived and took him to a nearby hospital.

As a result of the accident, Employee had lacerations to his head, feet, shoulders, and legs, as well as an injury to the acromioclavicular ("AC") joint above his right shoulder. On May 14, 2007, after returning to his home in Trezevant, Tennessee, Employee was treated by Dr. David Pearce, an orthopaedic surgeon, who determined that Employee had suffered a complete dislocation at his AC joint. To repair Employee's shoulder injury, Dr. Pearce performed surgery, placing a screw in Employee's clavicle. While Employee was recovering from this surgery, the screw came loose and a second surgery was required to remove it. Employee declined Dr. Pearce's offer of a third surgery when the doctor could not assure Employee that it would be successful. Dr. Pearce concluded that Employee's AC joint injury was permanent and assigned Employee a permanent impairment rating of 20% to the right upper extremity and 12% to the body as a whole based upon shoulder dysfunction.

Employee did not return to work for Employer after the accident. In a letter dated August 31, 2007, Employer notified Employee of an unspecified short-term light duty position in Memphis, beginning September 10, 2007. Employee, who was still under his doctor's care and receiving physical therapy treatment, did not accept the Memphis position and asserts that he was fired from his employment.

On May 19, 2008, Employee sued Employer's workers' compensation insurer, Travelers Indemnity Company ("Travelers"), seeking benefits. Travelers filed a motion for summary judgment, arguing that Employee's injuries were not compen-

sable because they did not arise out of his employment. The trial court denied the motion, and conducted a nonjury trial on January 6, 2010.

After considering the testimony of Employee, Employer's representative, engineering experts on behalf of each party, and the deposition of Dr. Pearce, the trial court took the case under advisement. On February 10, 2010, the trial court entered a judgment in favor of Employee, ruling that he "was subjected to a [greater] harm than the general public in the area at the same time, thus, [Employee's] injury not only was incurred in the scope of his employment, but also in the course of his employment and is compensable." The trial court concluded that Employee qualified for the maximum amount of weekly compensation for permanent partial disability in the amount of $683 per week and that he had not experienced a meaningful return to work and thus was not subject to the statutory cap.[1] Based upon these determinations, the trial court awarded Employee $130,944 for a 48% permanent partial disability to the body as a whole due to his right shoulder injury and assigned Travelers liability for Employee's future medical treatment for that injury.

Travelers appealed, and the case was initially referred to the Special Workers' Compensation Appeals Panel for a hearing and a report of findings of fact and conclusions of law in accordance with Tennessee Code Annotated section 50–6–225(e)(3) (2008). Before the Panel filed its opinion, the case was transferred for review by the full Court.

On review, we consider two issues:

1) Whether Employee's injury arose out of his employment.

2) Whether Employee had a meaningful return to work.

## Analysis

■■■ We are statutorily required to review the trial court's factual findings "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn.Code Ann. § 50–6–225(e)(2). Following this standard, we are further required "to examine, in depth, a trial court's factual findings and conclusions." *Crew v. First Source Furniture Grp.*, 259 S.W.3d 656, 664 (Tenn.2008) (quoting *Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584, 586 (Tenn.1991)). We accord considerable deference to the trial court's findings of fact based upon its assessment of the testimony of witnesses it heard at trial, although not so with respect to depositions and other documentary evidence. *Padilla v. Twin City Fire Ins. Co.*, 324 S.W.3d 507, 511 (Tenn.2010); *Glisson v. Mohon Int'l, Inc./Campbell Ray*, 185 S.W.3d 348, 353 (Tenn.2006). We review conclusions of law de novo with no presumption of correctness. *Wilhelm v. Krogers*, 235 S.W.3d 122, 126 (Tenn.2007). Although workers' compensation law must be liberally construed in favor of an injured employee, the employee must prove all elements of his or her case by a preponderance of the evi-

---

1. Tennessee Code Annotated section 50–6–241(d)(1)(A) (2008 & Supp.2010) provides in pertinent part:

For injuries occurring on or after July 1, 2004, in cases in which an injured employee is eligible to receive any permanent partial disability benefits ... for body as a whole ... and the pre-injury employer re-

turns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of the injury, the maximum permanent partial disability benefits that the employee may receive is one and one-half (1½) times the medical impairment rating determined pursuant to the provisions of § 50–6–204(d)(3).

dence. *Crew,* 259 S.W.3d at 664; *Elmore v. Travelers Ins. Co.,* 824 S.W.2d 541, 543 (Tenn.1992).

### Arising Out of Employment

For an injury to be compensable under the Tennessee Workers' Compensation Law, an employee must prove by a preponderance of the evidence that the injury is one arising out of and in the course of employment. Tenn.Code Ann. § 50–6–102(12) (2008); *Wait v. Travelers Indem. Co. of Ill.,* 240 S.W.3d 220, 225 (Tenn.2007). The phrases "arising out of" and "in the course of" are similar, but have important differences.

The phrase "in the course of" refers to the time, place, and circumstances of the employee's injury. *Crew,* 259 S.W.3d at 664. An injury that occurs while an employee is performing his or her job at the time and place assigned by the employer is presumed to be one occurring in the course of employment. The parties agree that Employee was injured in the course of his employment. However, Employer does not agree that Employee's injury arose out of his employment.

The phrase "arising out of" refers to a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Id.* The event causing the injury must have its origin in a risk connected with the employment. *Wilhelm,* 235 S.W.3d at 127; *Ward v. Ward,* 213 Tenn. 657, 378 S.W.2d 754, 758 (1964). When an employee suffers an injury as the result of an uncontrolled force of nature or an act of God, to satisfy the "arising out of" requirement, the employee must prove that the injury was caused by an increased risk peculiar to the nature of the employment and not a danger common to the general public at the time and place where it occurred. *Hill v. St. Paul Fire & Marine Ins. Co.,* 512 S.W.2d 560, 562 (Tenn.1974). More than mere presence at the place of injury as a result of the employment relationship is required for an injury to arise out of the employment relationship.[2] *See Padilla,* 324 S.W.3d at 515 (citing cases). There must be " 'a causal connection between the conditions under which the work is required to be performed and the resulting injury.' " *Wilhelm,* 235 S.W.3d at 127 (quoting *Fink v. Caudle,* 856 S.W.2d 952, 958 (Tenn.1993)). As a general matter an injury will not be considered to have arisen out of employment unless it "emanate[d] from a peculiar danger or risk inherent to the nature of the employment. Thus, an injury purely coincidental, or contemporaneous, or collateral, with the employment ... will not cause the injury ... to be considered as arising out of the employment." *Wait,* 240 S.W.3d at 228 (citations omitted).

Therefore, Employee must prove more than the fact that while he was hauling a load of freight for Employer, he was injured when the truck he was driving was struck by a tornado. Employee must also prove that the particular conditions of his job as a truck driver exposed him to an

---

2. Under the "positional risk test" adopted in some jurisdictions, an employee need only prove that the work brought him within the range of danger by requiring his presence in the locale when the peril struck, even though any other person present would have also been injured regardless of his or her employment. *See Nat'l Fire Ins. Co. v. Edwards,* 152 Ga.App. 566, 263 S.E.2d 455, 456 (1979). The positional risk test has been adopted "based on the principle that employees who are on the job and performing duties for their employers should be compensated for injures occurring in the course thereof." *Logsdon v. ISCO,* 260 Neb. 624, 618 N.W.2d 667, 673 (2000). Tennessee has not adopted the positional risk test.

increased risk peculiar to the nature of his employment and not a danger common to the general public at the same time and place when it occurred.

Employee testified at trial that his truck's size, weight, length, maneuverability, and ability to accelerate and decelerate were different from other vehicles on the road at the time of the storm. Employee also testified that his truck is subject to government regulations that require him to use triangular reflectors and flares any time he stops on the shoulder of a highway, unlike other vehicles on the road. He further testified that his hours of driving are prescribed by law and Employer, which monitors the hours by inside-the-vehicle logs, and that Employer designated his route and placed time constraints on Employer's delivery and return.

In addition, Employee and Employer each had an expert witness testify. Leighton Sissom, who holds a Ph.D. in mechanical engineering, testified for Employee, and Erin Shipp, a professional engineer, testified for Employer. Dr. Sissom testified that it would take less wind force to overturn the truck than a car and that, after being lifted, a truck will land with more force than a car. Ms. Shipp disputed the opinion of Dr. Sissom concerning the force of the impact on the fall of the truck but agreed that a truck like the one Employee was driving was less maneuverable than a car, had slower acceleration, and was more difficult to turn around.

The trial court, after considering all the evidence, concluded that Employee met his burden of proof on this issue. The trial court found that the size, shape, and maneuverability of the truck and the restrictions on Employee's operation of the truck imposed by Employer subjected Employee to increased risk for harm during high winds. After carefully reviewing the record in this case, we hold that the trial court applied the proper legal standard and that the evidence does not preponderate against the trial court's determination that Employee's job exposed him to a greater risk of harm than that experienced by other members of the general public at the same time and place.

We conclude Employee was significantly handicapped in his ability to make choices, otherwise available to the general public, by various factors imposed upon him by his employment, including the size of the vehicle he drove, the route he was required to take, and the strict time schedule he was required to adhere to.

This case is factually different from two cases decided by this court involving forces of nature, *Jackson v. Clark & Fay, Inc.*, 197 Tenn. 135, 270 S.W.2d 389 (1954) and *Hill*, 512 S.W.2d 560. In each of these cases, an employee was killed in the course of his employment as the result of severe weather conditions; however, in each case the employee's injuries were found not to have arisen out of employment and were therefore not compensable.

In *Jackson*, the employee was killed by a storm as he was being transported along a public highway in the employer's truck from the employer's work site to sleeping quarters furnished by the employer. The trial court ruled that the employee's injuries were compensable because the employee was at his place of employment when he was killed and was engaged in activity expected of him by his employer. This court, in reversing the award of compensation, noted that the injury must be one that "by the exercise of foresight the employer might have contemplated" and concluded that the storm was not a danger peculiar to the employee's work but was a danger common to the general public at the time and place where it occurred and could not have been reasonably contemplated by the employer.

The circumstances in *Jackson* are clearly distinguishable from those in the present matter. In *Jackson* there was no evidence that the truck transporting the employee was of such size as to be at greater risk in a storm than other vehicles driven by the general public, that the employee was on the road because of a time schedule imposed by his employer, that the truck's size made it more difficult for its driver to exit the road and find shelter, that the employee would have been safer had he been in another vehicle or building rather than in his employer's truck, or that the employer could have reasonably contemplated a storm of this magnitude.

We also find the *Hill* case to be factually distinguishable from the matter now before us. In *Hill,* the employee, a night watchman, was killed when the building in which he was working for his employer was struck by a tornado and collapsed. Citing *Jackson,* the Court noted that the employee's death as a result of the tornado was not compensable because the danger of the tornado was common to the general public. *Hill,* at 562–63. Evidence supporting this ruling included testimony that other buildings in the same vicinity had also been destroyed by the tornado. Accordingly, as to the level of risk the employee confronted in *Hill,* it would not appear to have mattered whether he was in his employer's building or in a different building in the vicinity when the tornado struck. By contrast, in the present case testimony was presented that Employee would have been safer in a smaller vehicle or in a building than he was in his truck. Employee, however, did not have a choice but to be where he was—unlike members of the public in the same area—because of the time and place restrictions imposed by Employer.

This case is very similar to a case previously considered by the Illinois Supreme Court. In *Campbell 66 Express, Inc. v. Indus. Comm'n,* 83 Ill.2d 353, 47 Ill.Dec. 730, 415 N.E.2d 1043 (1980), the employee truck driver was driving his tractor and trailer rig from Missouri to Chicago when, at around 11:30 p.m., he encountered a windstorm and tornado. The tornado lifted the rig off the ground and hurled it 100 feet through the air and into an embankment, injuring the employee. *Id.,* 47 Ill. Dec. 730, 415 N.E.2d at 1044. Like Tennessee, Illinois law provides that when an injury results from an uncontrolled force of nature, it is not compensable unless the employee proves that his employment subjected him to an increased risk beyond that to which the general public is subjected. *Id.* Concluding that the evidence did not preponderate against the intermediate court's ruling in favor of the employee, the Court determined that since the employee was driving late at night, it was reasonable to infer that he was subject to some kind of time schedule "so that he did not have the same freedom of choice of whether or not to travel in inclement weather that an ordinary person would have had." *Id.,* 47 Ill.Dec. 730, 415 N.E.2d at 1045. The Court further determined that "the necessity for a truck driver to be on the highway at all times of the day and night, and in all kinds of weather, subjected [him] to a greater risk of injury from [a] tornado than that to which the general public in that vicinity was exposed." *Id.* Employee in the present case, like the truck driver in *Campbell 66 Express,* did not have the freedom of choice to avoid traveling in inclement weather that the general public would have had, and the necessity of being on the road for prolonged periods of time subjected him to a greater risk of injury from a tornado than the risk to which the general public in the same vicinity was exposed.

In sum, we conclude that Employee was subjected to a higher risk of injury from the tornado because of his employment than the general public would have had, and accordingly his injury arose out of his employment and is compensable.

### Meaningful Return to Work

The second issue we address is whether Employee had a meaningful return to work. Pursuant to Tennessee Code Annotated section 50–6–241(d)(1)(A), an employee injured after July 1, 2004, is not entitled to receive a permanent partial disability award greater than one and one-half times the employee's medical impairment rating if the employee has had a "meaningful return to work." *See Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327–28 & n. 8 (Tenn.2008). However, when the injured employee is found not to have had a meaningful return to work, this cap is increased to six times the medical impairment rating pursuant to Tennessee Code Annotated section 50–6–241(d)(2)(A). *Tryon*, 254 S.W.3d at 328. We have previously stated that the determination of whether an employee has experienced a meaningful return to work is fact-dependent and requires courts to "assess the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to either return to or remain at work." *Id.* (citing *Lay v. Scott Cnty. Sheriff's Dep't*, 109 S.W.3d 293, 297–98 (Tenn. 2003); *Nelson v. Wal–Mart Stores, Inc.*, 8 S.W.3d 625, 630 (Tenn.1999)).

The trial court ruled that Employee did not experience a meaningful return to work because "the conditions under which he was required to return, and the time frame under which he was required to return, were not reasonable under the attending circumstances" and that the work offered to Employee by Employer "would have been only temporary at best." The evidence does not preponderate against these findings.

Employee was forty years old at the time of trial and had a tenth grade education. He had worked primarily as a truck driver and had held a commercial drivers' license for over fifteen years. He sustained a serious injury to his shoulder in the accident that required two surgical procedures. By letter dated August 31, 2007, Employer offered Employee light duty work in Memphis just two weeks after his second surgery. Employee declined this offer. After he was released from the care of Dr. Pearce on October 24, 2007, Employee went to work for Roger Hinson Trucking in Bolivar, Tennessee, making over-the-road runs. However, Employee quit this job after two and one-half months because he could not tolerate the pain caused by his job duties. He later took a job repossessing vehicles and driving a "snatch truck," which did not involve as much physical labor and was done mainly with buttons and mechanical lifting and pulling. Employee testified he can no longer perform his over-the-road truck driving duties.

Employer argues that Employee had a meaningful return to work. Employer asserts that it offered him the position in Memphis but that Employee chose not to accept it. In our view, Employee acted reasonably in refusing Employer's offer. At the time the offer was made, he was still under the care of Dr. Pearce and was still in pain and receiving physical therapy treatments for several hours every other day in McKenzie, Tennessee. Because of the driving distance involved, Employee could not have worked in Memphis and continued his physical therapy in McKenzie. Although Employer argues that Employee could have received his physical therapy treatments in Memphis, the letter

offering him the light duty position did not so indicate and there is no proof that Employer advised Employee that he would be provided physical therapy in Memphis. Thus, as far as Employee knew, in order to accept the position, which was an unspecified temporary position, he would have had to give up his ongoing medical treatment.

Employer also argues that Employee acted unreasonably in failing to return to work with Employer after being released by Dr. Pearce in October of 2007 and instead obtained employment elsewhere repossessing vehicles. Employer's argument is without merit. Employee testified that he was terminated by Employer before he was released by Dr. Pearce, and the evidence does not preponderate to the contrary. Further, there is no proof that he was offered any position with Employer after the letter of August 31, 2007.

In sum, the record confirms that Employee acted reasonably in failing to accept Employer's offer of light-duty employment and thus did not have a meaningful return to work. Accordingly, the statutory cap of one and one-half times the medical impairment rating does not apply.

### Conclusion

After careful review of the record, we conclude that the evidence does not preponderate against the trial court's determination that Employee's injury arose out of and in the course of his employment. We further conclude that Employee did not have a meaningful return to work and therefore the statutory cap of one and one-half times the medical impairment rating is not applicable. Accordingly, the judgment of the trial court is affirmed. Costs are assessed to the appellant, Travelers Indemnity Company and its surety, for which execution may issue if necessary.