**FILED**
**Nov 05, 2018**
**11:02 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **LASHONDA SMITH,** | ) | **Docket No. 2018-06-0810** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 31238-2018** |
| **MACY'S CORPORATE** | ) | |
| **SERVICES,** | ) | **Judge Joshua Davis Baker** |
| **Employer.** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER

---

Ms. Smith requested temporary disability and medical benefits in an expedited hearing on October 16, 2018. The issue is whether Ms. Smith is likely to prevail at hearing on the merits in proving the injury she sustained while riding a bus home from work occurred within the course and scope of her employment for Macy's. Macy's argued she is unlikely to prevail as Macy's did not provide the bus service and did not pay or reimburse Ms. Smith for her transportation. The Court holds that Ms. Smith is unlikely to prevail at a hearing on the merits because evidence is insufficient to prove that Macy's made a deliberate and substantial payment for the bus service.

## Claim History

On November 29, 2017, Ms. Smith finished her shift at Macy's distribution center in Portland, Tennessee, and took a seat near the back of a Safe Harbor bus to Clarksville. Safe Harbor, a charitable organization, operated the bus service between Clarksville and Portland solely for Macy's seasonal employees. Roughly fifty other employees boarded the bus with Ms. Smith.

About thirty minutes into her ride, Ms. Smith smelled smoke and turned to see flames at the back of the bus. She yelled for the driver to stop. He pulled to the roadside, but in his distress, he fled without putting the bus in park. Panic ensued as the bus rolled backward toward a creek-bed. Ms. Smith said, "Everybody began to scream, [as] the bus started going off the road." Ms. Smith struggled to escape from behind dozens of

passengers, all of whom were trying to exit the moving bus. Some passengers kicked out windows and jumped. Ms. Smith scrambled to the door and grappled with her fear of jumping versus facing the flames. She said, "I was just trying to get myself to jump . . . I just remember jumping, and that was it." She awoke in an ambulance.

After Ms. Smith received emergent care at NorthCrest Medical Center for her left hip, she filed a workers' compensation claim. Macy's denied her claim, asserting the injury did not occur within the course and scope of her employment because Safe Harbor owned and operated the bus service. Further, Macy's claimed it did not pay for or furnish Safe Harbor's transportation for employees. Ms. Smith did not receive medical treatment after the denial.

Kyle Bennett, vice-president of the company that operates Safe Harbor, testified by deposition. He described its business arrangement with Macy's as "an industry first." Safe Harbor, a non-profit residential facility, offered "housing, transportation, and employment services" for "those facing hard times [to] restore their faith in God." For other employers, Safe Harbor acted as a quasi-staffing agency. In those cases, Safe Harbor collected money from businesses who employed residents, then paid the residents wages minus the cost of their housing and transportation.

In 2015, Macy's approached Safe Harbor "to assist in recruiting" seasonal employment for its Portland distribution center. They entered into a direct hire recruiting service agreement whereby Safe Harbor submitted prospective employees' resumes to Macy's by email. If Macy's hired the employee, it paid Safe Harbor "a margin fee" of fourteen percent of that employee's gross pay. Mr. Bennett testified, "If we assisted in the recruiting and provided the transportation for them, then [Macy's] did pay the margin." When counsel asked Mr. Bennett if Macy's paid "the margin fee for every employee on that bus," he answered, "yes." He also said Macy's contracted with Safe Harbor in part to provide transportation services, although he acknowledged the contract did not reflect that understanding. He said Safe Harbor had buses dedicated to Macy's seasonal employees, and "ninety percent" of those using the bus service were "just people in the community that Macy's had hired" who had no affiliation to Safe Harbor.

Ms. Smith, a Clarksville resident without affiliation to Safe Harbor, explained how her seasonal employment began during the 2016 and 2017 holiday seasons. In 2016, she responded to Macy's advertisements on billboards and flyers, and Macy's directed her to apply at Safe Harbor in Clarksville. Her 2016 application showed Macy's designated her as a "referral" of "Safe Harbor Staffing." She rode the Safe Harbor bus to work for Macy's that year, and Safe Harbor deducted money directly from her bank account to cover transportation costs. In 2017, Macy's sent Ms. Smith mail and email to advertise its seasonal employment. But this time, Macy's directed her to a local Goodwill, instead of to Safe Harbor, to complete an application. There, she met solely with Macy's representatives.

2

Ms. Smith explained Macy's offered the Safe Harbor transportation service to its seasonal employees again in 2017, but Macy's deducted the transportation fee directly from her paycheck. She and "most" others signed a Transportation Program Election Form on Macy's letterhead during orientation to allow the payroll deduction. The form authorized Macy's to deduct $20.00 from weekly paychecks to offset Safe Harbor's transportation costs and directed the employees "to abide by Macy's policies regarding the use of this program." Macy's also provided special employee-identification badges for bus passes and gave employees Safe Harbor's bus schedule.

Ms. Smith testified that Macy's offer of transportation through Safe Harbor enabled her to work. She said Macy's in Portland is sixty miles from Clarksville. No public transportation existed between the two cities. Alternative public transportation cost $650 for a five-day workweek. Ms. Smith earned $358.75 as an average weekly wage.

Holly Hubbs, Macy's HR director for the Portland facility, provided information about Macy's seasonal employment, recruitment, and its relationship with Safe Harbor. She testified Macy's recruited in Clarksville to fulfill staffing demands for the holiday season, recruiting "seventeen hundred" seasonal employees from Clarksville in 2017. She "provided a head count to Safe Harbor" of those hired and riding the bus. While she did not know "the exact number" of bus riders, it was "a lot." Macy's designated Goodwill applicants as Safe Harbor recruits. Macy's did not own or control the Safe Harbor buses, only paid employees for hours worked in the facility, and did not reimburse employees or otherwise pay for transportation. She explained Safe Harbor asked Macy's to deduct the transportation fee from employees' paychecks in 2017 because it was burdensome to track and collect payment. She could not say what "Macy's Policies" meant on the election form, only saying Macy's wanted employees to behave respectfully while riding the bus.

## Findings of Fact and Conclusions of Law

Ms. Smith need not prove every element of her claim by a preponderance of the evidence to receive relief at an expedited hearing. Instead, she must present sufficient evidence that she is likely to prevail at a final hearing. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

To prove compensability at a final hearing, Ms. Smith must establish her injury arose primarily out of the course and scope of her employment with Macy's. Tenn. Code Ann. § 50-6-102(14) (2018). The "course of employment" means the time, place, and circumstances of the injury, and the "arising out of" requirement refers to causation and the causal connection between the work and the resulting injury. *Dugger v. Home Health Care of Middle Tennessee, LLC*, 2016 TN Wrk. Comp. App. Bd. LEXIS 13, *14 (Mar.

16, 2016). Generally, an employee's injuries while traveling to or from work are not within the course of employment unless they occur on the employer's premises. *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 534 (Tenn. 2006).

However, Tennessee has created exceptions to the "going and coming" rule where "transportation is furnished by an employer as an incident of the employment." *Eslinger v. F & B Frontier Const. Co.*, 618 S.W.2d 742, 744 (Tenn. 1981). When an employee sustains an injury "going to and from work by means of transportation furnished by the employer as 'an incident of the employment' or as part of the compensation afforded to the employee," the injury occurred in the course of his employment. *Anderson v. Sam Monday Motors*, 619 S.W.2d 382, 383 (Tenn. 1981). Transportation provided by an employer in the course of the employment is based on the extension of risks that are under the employer's control. *Dugger*, at *14. Consequently, many "going and coming" cases involve employer-owned, employer-controlled transportation such as a horse, motorcycle, train, or automobile. *See McClain v. Kingsport Improvement Corp.*, 245 S.W. 837 (Tenn. 1922); *W.C. Sharp Drug Stores v. Hansard*, 144 S.W.2d 777 (Tenn. 1940); *Norwood v. Tellico River Lumber Co.*, 244 S.W. 490, 491 (Tenn. 1922); *Ward v. Ward*, 378 S.W.2d 754 (Tenn. 1964).

Yet for those transportation methods not owned or controlled by an employer, such as an employee's personal vehicle, an injury occurs in the course of employment "where the employer makes a deliberate and substantial payment for the expense of travel." *Pool v. Metric Constructors, Inc.*, 681 S.W.2d 543, 545 (Tenn. 1984). The "furnishing of a vehicle by the employer is sufficient to place travel within the scope of and in the course of employment," as "there is little difference in principle between furnishing an amount in cash equivalent to the value of the use of the employee's own car and furnishing the car itself." *Id.*

Here, since Macy's did not own or directly control the transportation offered to Ms. Smith, the Court must determine whether Macy's margin fee payments amounted to a deliberate and substantial payment for its employees' transportation. Macy's paid Safe Harbor fourteen percent of an employee's gross pay if Safe Harbor "recruited" the employee. However, it is difficult for the Court to discern what "recruitment" actually entailed and the extent of Safe Harbor's services for Macy's. Ms. Smith did not become aware of Macy's employment opportunity from Safe Harbor, nor did Macy's become aware of Ms. Smith through Safe Harbor. Her testimony depicts Safe Harbor's primary role as providing inexpensive transportation so Macy's could employ Clarksville residents, whose travel would otherwise be cost-prohibitive, during the most demanding season in retail. Yet, as a whole, it is unclear for whom Macy's paid margin fees or for what actual purpose. Thus, the Court cannot find Ms. Smith is likely to prevail in proving Macy's deliberately paid for her transportation.

4

Similarly, the Court cannot discern whether Macy's made a "substantial payment for the expense of travel" without knowing Safe Harbor's transportation costs and whether the margin fees covered some or all of those operational costs. Based on Ms. Smith's testimony, the Court finds commuting to Portland from Clarksville in her personal vehicle cost Ms. Smith $282 per week. She paid Safe Harbor $20 per week. Thus, the service provided substantial value to Ms. Smith, but the proof is insufficient to show whether the margin fees amounted to a "substantial payment" for the expense of her travel with Safe Harbor. The Court cannot find Ms. Smith is likely to prevail in proving Macy's made a substantial payment for her transportation.

While the proof demonstrated that Macy's facilitated and offered this inexpensive transportation to induce employees to accept employment, that fact alone does not bring the transportation within the course and scope of Ms. Smith's employment. Ms. Smith testified the employment would not have been possible without Safe Harbor's bus service. The Court finds this testimony both reasonable and credible, as public transportation did not exist and using a personal vehicle or a taxi service would have been cost-prohibitive. Macy's facilitated the service by providing the election form, the bus schedule, the identification required to access the bus, paying fourteen percent "for every rider on that bus," and deducting a nominal payment for the transportation from its employees' paychecks. However, facilitating the transportation is not equivalent to furnishing the transportation. Further, inducing Ms. Smith's employment by facilitating transportation without the employer exercising control over or deliberately, substantially paying for the transportation is not sufficient to make that transportation a part of her employment. Thus, the Court holds Ms. Smith is unlikely to prevail at a hearing on the merits in proving she sustained an injury during the course and scope of her employment with Macy's.

**IT IS, THEREOFRE, ORDERED** as follows:

1. Ms. Smith's request for workers' compensation benefits is denied at this time.

2. This matter is set for a Status Conference on Monday, December 10, 2019, at 10:00 a.m. (CST). You must call 615-741-2113 or toll-free 855-874-0474 to participate in the Hearing. Failure to call may result in a determination of issues without your further participation.

**ENTERED ON NOVEMBER 5, 2018.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

**APPENDIX**

**Exhibits:**

1. Affidavit of Lashonda Smith
2. Notice of Claim Denial
3. Medical Bills
4. Affidavit of Holly Hubbs
5. Transportation Election Form
6. Wage Statement
7. Employment Application
8. Ms. Smith's Deposition Transcript
9. Bus Schedule

**Technical Record:**

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Ms. Smith's Pretrial Brief
5. Macy's Witness and Exhibit List

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on November 5, 2018.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Email Address |
|------|----------------|------------------|---------|-----------|---------------|
| Donald Zuccarello, Employee's Attorney | | | | X | dzuccarello@ddzlaw.com |
| Garrett Estep, Employer's Attorney | | | | X | gestep@farris-law.com; kraybone@farris-law.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
Wc.courtclerk@tn.gov

7



<u>Expedited Hearing Order Right to Appeal</u>:

   If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

<u>Notice</u>

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

<u>Statement of the Issues</u>

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

<u>Additional Information</u>

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

<u>List of Parties</u>

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20 ___

[Signature of appellant or attorney for appellant] _____

LB-1099   rev. 10/18                    Page 2 of 2                    RDA 11082



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____     Relationship: _____

_____     Relationship: _____

_____     Relationship: _____

_____     Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

LB-1108 (REV 11/15)                                                          RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental $ _____ per month

| | | |
|---|---|---|
| Groceries | $ _____ per month | Telephone    $ _____ per month |
| Electricity | $ _____ per month | School Supplies $ _____ per month |
| Water | $ _____ per month | Clothing      $ _____ per month |
| Gas | $ _____ per month | Child Care    $ _____ per month |
| Transportation | $ _____ per month | Child Support $ _____ per month |
| Car | $_____ per month | |
| Other | $ _____ per month (describe: _____ ) | |

10. Assets:

| | | |
|---|---|---|
| Automobile | $ _____ | (FMV) _____ |
| Checking/Savings Acct. | $ _____ | |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe:_____ |

11. My debts are:

Amount Owed                To Whom

_____      _____

_____      _____

_____      _____

_____      _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____ , 20_____ .

_____

NOTARY PUBLIC

My Commission Expires:_____