**FILED**
**Jun 03, 2020**
**01:13 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT KNOXVILLE

| | | |
|---|---|---|
| **BRETT ROSASCO,** | ) | **Docket No. 2019-03-1563A** |
| **Employee,** | ) | |
| **v.** | ) | |
| **WEST KNOXVILLE PAINTERS,** | ) | |
| **LLC,** | ) | **State File No. 114808-2019** |
| **Employer,** | ) | |
| **and** | ) | |
| **STATE FARM FIRE AND** | ) | |
| **CASUALTY COMPANY,** | ) | **Judge Pamela B. Johnson** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

Brett Rosasco, working as a painter for West Knoxville Painters (WKP), exited a portable restroom when he was struck by a falling tree. He sought medical and temporary disability benefits for the resulting injuries, which WKP denied, arguing the incident was caused by an act of God. After an Expedited Hearing on May 13, 2020, the Court holds Mr. Rosasco is not entitled to the requested benefits at this time.

### History of Claim

On October 31, 2019, Mr. Rosasco, while painting the exterior of a house, needed to use the restroom. He used a portable restroom located in the street near the property.[1] While inside the portable restroom, he heard a loud crack and rushed out of the restroom, where a falling dead tree struck his right shoulder and pinned him to the ground.[2]

---

[1] WKP did not procure the portable restroom for the jobsite. Neither party knew how it came to be in the street, but both stated that work was being performed in the area by others.

[2] Mr. Rosasco described the weather as windy and getting windier at the time he took the restroom break. WKP introduced a Site Specific Weather Analysis, which stated that thunderstorms produced wind gusts as high as sixty-nine miles per hour at the site of the incident on October 31, 2019.

After his coworkers lifted the tree off him, he was taken to the emergency room. He required hospitalization and ultimately underwent a multi-level fusion surgery to repair fractures in his spine. He was discharged from the hospital on November 3 with instructions of no return to work until released by the treating surgeon, Dr. William Oros.

After his hospitalization, Mr. Rosasco continued to treat with Dr. Oros, who restricted him from lifting greater than ten pounds on November 26 and increased it to no lifting greater than twenty-five pounds on January 29, 2020. On that date, Dr. Oros further noted that Mr. Rosasco could wean himself out of the brace. Mr. Rosasco returned to work for another employer in February.

WKP denied medical or temporary benefits for Mr. Rosasco's injury on grounds that he was not within the course and scope of my employment when the injury occurred and because the incident was an "act of God."

Mr. Rosasco testified that he was unaware of the dead tree or its proximity to the portable restroom. WKP's representative, Greg Spradling, similarly testified that he did not know about the dead tree or other dead trees near the jobsite.

### Findings of Fact and Conclusions of Law

At an Expedited Hearing, Mr. Rosasco must demonstrate that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

To recover benefits, Mr. Rosasco must show that his injury arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(14). "'[A]rise out of' and 'in the course of the employment' are not synonymous 'although both elements exist to ensure a work connection to the injury for which the employee seeks benefits.'" *Johnson v. Wal-Mart Assoc., Inc.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 18, at *10-12 (July 2, 2015) (internal citations omitted). "An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform." *Id.* "An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Id.*

WKP argued Mr. Rosasco's injury did not arise out of or occur in the course and scope of his employment because the wind causing the dead tree to fall was a non-compensable act of God.

An act of God is "[a]n overwhelming, unpreventable event caused exclusively by forces of nature, such as an earthquake, flood, or tornado. The definition has been

statutorily broadened to include all natural phenomena that are exceptional, inevitable, and irresistible, the effects of which could not be prevented or avoided by the exercise of due care or foresight." *McCaffery v. Cardinal Logistics*, 2015 TN Wrk Comp App Bd LEXIS 50, at *11-12 (Dec. 10, 2015) (internal citations omitted). "Any misadventure or casualty is said to be caused by the act of God when it appears by the direct, immediate, and exclusive operation of the forces of nature, uncontrolled or uninfluenced by the power of man and without human intervention." *Id*.

The Tennessee Supreme Court has considered the act of God defense in several workers' compensation cases. In *Jackson v. Clark and Fay, Inc.*, 270 S.W.2d 389, 392 (Tenn. 1954), the employee was killed by a storm as he was being transported along a public highway in the employer's truck from the employer's work site to sleeping quarters furnished by the employer. The trial court awarded benefits, finding that the employee was at his place of employment when he was killed and engaged in activity expected of him by his employer. The Supreme Court reversed the trial court, concluding:

> This storm was not a danger peculiar to the work in which Jackson was engaged. It was a danger common to the general public at the time and place where it occurred. It was not a hazard incident to his employment. It did not have its origin in a risk connected with that employment. It did not flow from that source as a rational consequence. The employer by the exercise of reasonable foresight could not have reasonably contemplated this hazard as a result of transporting his employees from their place of employment to their night quarters.

*Id*.

Similarly, in *Hill v. St. Paul Fire & Marine Ins. Co.*, 512 S.W.2d 560 (Tenn. 1974), an employee, who worked as a night watchman, was crushed to death when the building where he was working collapsed during a tornado. The employer contended that the employee's death did not arise out of or in the course of his employment, and that the proximate cause of his death was the tornado. The surviving spouse claimed that the building collapsed because it was poorly constructed and that tornadoes were a foreseeable cause of injury in the locality. The Tennessee Supreme Court affirmed the trial court's dismissal of the suit, holding:

> The tornado was not a hazard or risk peculiar to the work of Hill as a night watchman. It was a danger common to the general public at the time and place where it occurred. It was not a hazard incident to Hill's employment. It did not flow from his work as a rational consequence. His employer by the exercise of reasonable foresight could not have reasonably anticipated a tornado as a result of Hill's employment.

3

*Id*. at 562.

However, an employee may recover benefits for an injury caused by an act of God if, "by reason of employment, [the employee] is subjected to a hazard from such act of God not common to the general public, but peculiar to the nature of the employment and to the condition under which that employment is required to be performed." *Jackson*, 270 S.W.2d at 392.

In *Dixon v. Travelers Indemn Co.,* 336 S.W.3d 532 (Tenn. 2011), an employee was injured when a tornado struck the tractor-trailer rig he was driving for his employer. The carrier argued the injuries did not arise out of the employment. The trial court disagreed, finding that the size, shape, and maneuverability of the truck and the restrictions on the operation of it imposed by employer subjected employee to an increased risk during high winds. The Tennessee Supreme Court agreed, concluding that the employee was significantly hampered in his ability to make choices, otherwise available to the general public, by various factors imposed upon him by his employment, including the size of the vehicle he drove, the route he was required to take, and the strict time schedule he was required to adhere to.

Of importance, the Supreme Court in *Dixon* offered guidance in determining whether an injury claimed to be an act of God satisfies the "arising out of" requirement. Specifically, an employee must prove that the injury was caused by an increased risk peculiar to the nature of the employment and not a danger common to the general public at the time and place where it occurred. *Id*. at 537. More than mere presence at the place of injury as a result of the employment relationship is required for an injury to arise out of the employment relationship. Stated another way, there must be a causal connection between the conditions under which the work is required to be performed and the resulting injury. Namely, the injury must emanate from a peculiar danger or risk inherent to the nature of the employment" and one purely coincidental, contemporaneous, or collateral with the employment does not arise out of it. *Id*. (Internal citations omitted).

Here, no one disputed that Mr. Rosasco was in the area where the dead tree fell due to his employment. However, he must come forward with more than his mere presence at the place of injury to satisfy the "arising out of" requirement.

Namely, as *Dixon* instructs, he must show a causal connection between the work he performed and the resulting injury. The Court cannot find that he did. Mr. Rosasco's work as an exterior painter placed no increased risk peculiar to his employment that a dead tree might fall on him than the general public in the same place and at the same time might face. In other words, the general public at the same time and in the same place bore the same risk as he did from the risk of a falling dead tree striking them. Moreover, no evidence suggested that WKP, by the exercise of reasonable foresight, could not have reasonably anticipated a dead tree would fall on its employee during high winds.

4

Additionally, unlike in *Dixon,* Mr. Rosasco failed to introduce evidence that WKP significantly limited his ability to make choices, otherwise available to the general public, by various factors imposed on his by his employment. Specifically, Mr. Rosasco offered no testimony that WKP directed him where to use the restroom, when to use the restroom, or otherwise prohibited his ability to leave the jobsite to use the restroom at an alternate restroom, thereby subjecting him to an increased risk.

Based on the evidence, the Court holds Mr. Rosasco failed to demonstrate that he is likely to prevail at a hearing on the merits that his injury arose out of his employment and denies his request for benefits at this time. Given the above finding, it is unnecessary to address whether Mr. Rosasco's injury occurred in the course and scope of his employment.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Rosasco's request for benefits is denied at this time.

2. This case is set for a Scheduling Hearing on **August 13, 2020**, at **9:30 a.m. Eastern Time**. The parties must call 855-543-5041 toll-free to participate. Failure to appear by telephone may result in a determination of the issues without the party's participation.

**ENTERED June 3, 2020.**

*Pamela B. Johnson*
**JUDGE PAMELA B. JOHNSON**
**Court of Workers' Compensation Claims**

## APPENDIX

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Employee's Request for Expedited Hearing
4. Employer's Witness List
5. Employer's Notice of Filing Medical Records
6. Employer's Exhibit List
7. Employer's Pre-Trial Brief
8. Employee's Pre-Trial Brief

Exhibits:
1. Brett Rosasco's Rule 72 Declaration
2. Meteorologist James Bria's Weather Analysis Report
3. Employee's Written Discovery Responses
4. Collective Medical Records

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on June 3, 2020.

| Name | Certified Mail | Email | Service sent to: |
|---|---|---|---|
| Cary L. Bauer, Employee's Attorney | | X | clbauer@sidgilreath.com |
| Allen Callison, Employer's Attorney | | X | allen.callison@mgclaw.com |

_____
**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____


_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s) (Requesting Party):** _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*